PHILIP J. GRAVES (SBN 153441)
philipg@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

Attorneys for Plaintiff
JOSEPH NEEV

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH NEEV, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT MEDICAL OPTICS INC., a Delaware corporation,<br><br>Defendant. | No. 8:15-cv-1992<br><br>**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL** |

Plaintiff Joseph Neev ("Dr. Neev"), by and through his undersigned attorneys, pleads as follows:

## I. PARTIES

1. Dr. Neev is an individual residing in Laguna Beach, California.

2. Abbott Medical Optics Inc. ("AMO") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Santa Ana, California.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4. On information and belief, this Court has personal jurisdiction over AMO for the reasons, among others that (i) AMO has its headquarters in Santa Ana, California, (ii) AMO transacts business by selling infringing products in California, and (iii) AMO maintains an agent for service of process in Los Angeles, California.

5. Venue is proper in this District because (i) AMO resides in this District within the meaning of 28 U.S.C. §§ 1391 and 1400(b), and (ii) AMO has committed acts of infringement in this District and has a regular and established place of business in this District.

## III. FACTUAL ALLEGATIONS

### A. Dr. Neev

6. Dr. Joseph Neev is a physicist and an inventor of revolutionary applications of lasers in the ophthalmic, dermatological, dental and cardiovascular fields.

7. Dr. Neev's career in advancing the use of laser technology to optimize surgical applications began in the late 1980s. His contributions to augment the use of lasers in medical and other applications is well-recognized in the industry, and can be seen through his numerous publications and his affiliation with reputable institutions such as Lawrence Livermore National Laboratory ("Livermore"), the University of

California at Irvine ("UCI"), the Beckman Laser Institute, the University of California at San Diego, the University of California at San Francisco, Cornell University School of Medicine, the University of Texas at Austin, Stanford University's School of Medicine and Duke University's School of Medicine. As an internationally recognized leader in the field of femtosecond lasers in surgery and medicine, Dr. Neev was asked, in the mid-1990's, to organize the first conference on commercial and biomedical applications of ultrashort pulse lasers and served as the conference chair or co-chair for over a decade.

8. In the mid and late 1990s, Dr. Neev worked as an assistant professor of surgery at the Beckman Laser Institute and Medical Clinic, which was part of the Department of Surgery at UCI. At the time, Dr. Neev worked with other University of California scientists at Livermore on research and development projects relating to ultrashort pulse lasers. Livermore, which was managed by the University of California at the time, is a federally funded research laboratory, entrusted with strengthening the United States' security through the development and application of world-class science and technology.

**B. The '199 Patent**

9. Following his departure from UCI, Dr. Neev continued his research concerning medical applications of laser technology. Dr. Neev's subsequent work has resulted in the issuance of at least 15 U.S. Patents covering various laser, light and heat-based biomedical applications. Among these is U.S. Patent No. 6,482,199 (the "'199 Patent"), entitled "Method and Apparatus for High Precision Variable Rate Material, Removal and Modification," which was issued to Dr. Neev by the U.S. Patent and Trademark Office on November 19, 2002.

10. Dr. Neev is the sole inventor and owner of the '199 Patent, and holds all right, title and interest in and to the '199 Patent.

**C. The CATALYS Precision Laser System**

11. AMO markets and sells the CATALYS Precision Laser System in the

United States.

12. On information and belief, in or around 2011 or 2012, OptiMedica Corporation ("OptiMedica") began marketing and selling the CATALYS Precision Laser System in the United States for certain indicated uses in connection with cataract surgery.

13. On information and belief, OptiMedica was acquired by AMO in or around August 2013, with the result that AMO became liable on the obligations of OptiMedica.

14. The CATALYS Precision Laser System is an ophthalmic surgical laser system designed for laser cataract surgery, and specifically for use in patients undergoing cataract surgery for removal of the crystalline lens. Indicated uses in cataract surgery include anterior capsulotomy, phacofragmentation, and the creation of single plane and multi-plane arc cuts/incisions in the cornea.

15. On information and belief, the CATALYS Precision Laser System is used to selectively ablate and/or modify eye tissue.

16. On information and belief, the CATALYS Precision Laser System operates with a pulse duration of less than 600 femtoseconds.

17. On information and belief, the CATALYS Precision Laser System operates with a pulse repetition rate of 120 kilohertz.

18. On information and belief, when the CATALYS Precision Laser System is used for an indicated use, laser energy is directed at and below the surface of the eye, creating incisions or tunnels in the cornea as well as a plurality of cavitation bubbles below the surface of the eye.

19. On information and belief, when the CATALYS Precision Laser System is used for an indicated use, an absorption and/or scattering characteristic of the material of the target region of the eye is varied, for example, as a result of the application of suction to the eye by a patient interface.

20. On information and belief, certain parameters of the CATALYS Precision

Laser System, such as the pulse energy, may be or have been manipulated such that a deposited volumetric power density of the beam within a target region of the eye is greater than the threshold volumetric power density.

21. On information and belief, when the CATALYS Precision Laser System is used for an indicated use, ablation or other modification of eye tissue occurs as a result of the interaction of laser energy with eye tissue.

**COUNT I**

**INFRINGEMENT OF THE ’199 PATENT**

**(Against AMO)**

22. Dr. Neev restates and incorporates by reference his previous allegations above, as if fully set forth herein.

23. AMO has infringed and continues to infringe one or more claims of the ’199 Patent by making, using, selling or offering to sell in the United States and/or by importing into the United States the CATALYS Precision Laser System. OptiMedica infringed one or more claims of the ’199 Patent by making, using, selling or offering to sell in the United States and/or by importing into the United States the CATALYS Precision Laser System.

24. AMO has induced and continues to induce infringement of one or more claims of the ’199 Patent in the United States by, among others, ophthalmic surgeons performing eye surgery using the CATALYS Precision Laser System. AMO has known of the ’199 Patent since at least 2009, when Dr. Neev corresponded and met with representatives of AMO and informed them of the ’199 Patent, and has known or acted with willful blindness to the likelihood that the use of the CATALYS Precision Laser System by ophthalmic surgeons infringes the ’199 Patent.

25. OptiMedica induced infringement of one or more claims of the ’199 Patent in the United States by, among others, ophthalmic surgeons performing eye surgery using the CATALYS Precision Laser System. OptiMedica knew of the ’199 Patent since at least 2008, when Dr. Neev corresponded and met with representatives

of OptiMedica and informed them of the ’199 Patent, and knew or acted with willful blindness to the likelihood that the use of the CATALYS Precision Laser System by ophthalmic surgeons would infringe the ’199 Patent.

26. With respect to the CATALYS Precision Laser System, AMO’s website states:

- “Femtosecond laser assisted cataract surgery offers a reproducible, noninvasive technique to replace the least predictable and most technically demanding steps of conventional cataract procedures.”
- “The CATALYS® Precision Laser System combines a <600 femtosecond laser, gentle LIQUID OPTICS Interface, and integrated 3D Full Volume Optical Coherence Tomography (OCT) image-guidance system to create precise incisions in the lens and cornea.”

27. AMO intends (as did OptiMedica) that the infringing products be used in a manner that infringes the ’199 Patent. AMO, through its predecessors in interest, obtained FDA approval for infringing uses and markets these products for infringing uses. On information and belief, AMO directly or indirectly creates and provides manuals, brochures or other documentation instructing and enabling infringing uses.

28. AMO has contributed to and continues to contribute to infringement of one or more claims of the ’199 Patent in the United States by, among others, ophthalmic surgeons performing eye surgery using CATALYS Precision Laser System. AMO has known of the ’199 Patent since at least 2009. The infringing products embody a material part of the claimed invention of the ’199 Patent, and AMO knows that these products are especially made or adapted for uses that infringe the ’199 Patent. The infringing products are not a staple article or commodity of commerce suitable for substantial non-infringing uses.

29. OptiMedica contributed to infringement of one or more claims of the ’199 Patent in the United States by, among others, ophthalmic surgeons performing eye surgery using the CATALYS Precision Laser System. OptiMedica knew of the

’199 Patent since at least 2008, when Dr. Neev corresponded and met with representatives of OptiMedica and informed them of the ’199 Patent. The infringing products embody a material part of the claimed invention of the ’199 Patent, and OptiMedica knew that these products were especially made or adapted for uses that infringe the ’199 Patent. The infringing products are not a staple article or commodity of commerce suitable for substantial non-infringing uses.

30. AMO’s and OptiMedica’s infringement of the ’199 Patent has been willful, and AMO’s infringement continues to be willful. AMO has known of the ’199 Patent since at least 2009, and OptiMedica knew of the ’199 Patent since at least 2008. AMO knew or should have known that the CATALYS Precision Laser System infringe the ’199 Patent, and proceeded despite an objectively high likelihood that a court would find the products to be infringing. OptiMedica knew or should have known that the CATALYS Precision Laser System infringed the ’199 Patent, and proceeded despite an objectively high likelihood that a court would find the product to be infringing.

31. Neither AMO nor OptiMedica has or ever had a license under the ’199 Patent.

32. Dr. Neev has sustained significant damages as a direct and proximate result of AMO’s and OptiMedica’s infringement of the ’199 Patent.

33. Dr. Neev will suffer and is suffering irreparable harm from AMO’s infringement of the ’199 Patent. Dr. Neev is entitled to an injunction against AMO’s continuing infringement of the ’199 Patent. Unless enjoined, AMO will continue its infringing conduct.

34. AMO’s infringement of the ’199 Patent is exceptional and entitles Dr. Neev to attorneys’ fees and costs incurred in prosecuting this action.

**RELIEF REQUESTED**

WHEREFORE, Dr. Neev prays that the Court enter judgment as follows:

A. That AMO and OptiMedica have infringed and AMO continues to infringe the '199 Patent and that the '199 Patent is not invalid and is enforceable;

B. Awarding Dr. Neev damages adequate to compensate him for AMO's and OptiMedica's infringement of the '199 Patent, in an amount to be determined at trial, but in no event less than a reasonable royalty for the use made of the claimed inventions by them;

C. Awarding a preliminary and permanent injunction restraining and enjoining AMO, and its officers, agents, servants, employees, attorneys, and any persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from any further manufacture, use, sales, offers to sell, or importations of any and all of the products and services identified above;

D. Trebling all damages awarded to Dr. Neev under the '199 Patent;

E. Finding this case exceptional and awarding to Dr. Neev his reasonable attorneys' fees incurred in prosecuting his claims for patent infringement;

F. Costs and interest;

G. Such other relief as the Court determines to be just and proper.

DATED: November 30, 2015

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *_/s/ Philip J. Graves_*

Philip J. Graves (SBN 153441)
philipg@hbsslaw.com
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

Counsel for Plaintiff
JOSEPH NEEV

## DEMAND FOR JURY TRIAL

Dr. Neev requests a jury trial for all issues triable to a jury.

DATED: November 30, 2015

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *\/s/ Philip J. Graves*
Philip J. Graves (SBN 153441)

philipg@hbsslaw.com
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

Counsel for Plaintiff
JOSEPH NEEV